IRENE KOENIGS, SAME PERSON AS EILEEN KOENIGS, v. MARGARET TRAVIS AND ANOTHER. ARNOLD KOENIGS AND ANOTHER, THIRD-PARTY DEFENDANTS.[1]

March 2, 1956.

No. 36,719.

---

[1]Reported in 75 N. W. (2d) 478.

*Bang, Nierengarten & Hoversten,* for appellants.
*Rodney A. Dunnette,* for respondents.

NELSON, JUSTICE.

Plaintiff was a passenger in an automobile owned and operated by Marvin J. Koenigs when it was involved in an accident with

another automobile owned and operated by Richard W. Travis. The accident occurred on October 18, 1953, at a street intersection in the city of Austin. On October 27, 1953, plaintiff, whose name was formerly Irene Durben, and Marvin J. Koenigs were married. Plaintiff subsequently commenced an action against Margaret Travis and Richard W. Travis as defendants. Later the defendants were granted leave to commence an action as third-party plaintiffs against Arnold Koenigs and Marvin J. Koenigs and to make them third-party defendants. Said third-party defendants moved the court for summary judgment in their favor; the motion was granted; and this appeal is from the judgment dismissing the third-party action.

The defendants and third-party plaintiffs, in their assignments of error on appeal, contend that the court erred in directing entry of summary judgment in favor of the third-party defendants on the grounds: (1) That the third-party action had been prematurely commenced, and (2) that a third-party action in indemnity or contribution would not lie because of the marriage of the plaintiff to the third-party defendant Marvin J. Koenigs subsequent to the accident but before instituting the original negligence suit.

The issues on appeal were stated as follows:

"1. May a tort-feasor bring a third-party action in contribution or indemnity against a co-tort-feasor in the same accident before the first tort-feasor has paid any or all of the claim brought against him by the injured party?"

"2. If a female passenger in an automobile involved in a two-car collision marries the driver-owner of the car in which she was a passenger *subsequent* to such accident in which she is injured and prior to her suit against the driver-owner of the second car in such collision, can the driver-owner of the second car bring a third-party suit in indemnity or contribution against her then husband?"

Whether a tortfeasor may bring a third-party action in contribution or indemnity against a cotortfeasor in the same accident does not present the important question here. Such impleader became possible under M. S. A. 1949, § 540.16, by amendment, L. 1947, c. 152. Under Rule 14.01 of Rules of Civil Procedure, supersed-

ing § 540.16, a defendant is authorized to implead a party "who is or may be liable to him for all or part of the plaintiff's claim against him." The purpose of this rule is to permit the defendant to assert an independent claim against such third party which he otherwise would assert in another action, thus preventing a multiplicity of suits. This is a rule of procedure and does not create any substantive right. Neither does it abridge, enlarge, or modify the substantive rights of any litigant. A prerequisite to the use of the rule is that some substantive basis for a third-party claim be found to exist whether the basis be one of indemnity, subrogation, contribution, warranty, or other substantive right. This right given a litigant to implead another is not necessarily an absolute right since it rests in the discretion of the trial court.[2] As might be surmised from the above statement of the rule, contribution is predicated on common liability. Payment by defendant is not a prerequisite to his action for contribution. A defendant may implead for contribution if it appears he will be obliged to pay. 4 Dunnell, Dig. (3 ed.) § 1920; Anderson v. Kenosha Auto Transp. (D. Minn.) 6 F. R. D. 265.

While the method of impleading the third-party defendants on the basis of contribution may in the instant case have been perfectly proper under the rules of procedure, that feature of the case, which is one in pleading, does not present the determinative question here. The determinative question presents itself in the second of the legal issues.

■ We are confronted with the well-established common-law rule that a married woman cannot maintain an action against her husband for damages claimed to have been suffered by her through the negligence of her husband prior to her marriage to him. In this state the courts have adhered to the rule that, whether the tort is committed during coverture *or prior to their marriage,* a wife cannot maintain an action against her husband, nor a husband against his wife, for a tort committed by one against the other.

In the case of Patenaude v. Patenaude, 195 Minn. 523, 263 N. W. 546, the wife as plaintiff sued to recover damages for personal

[2]1 Youngquist & Blacik, Minnesota Rules Practice, pp. 458, 459.

injuries suffered by her claimed to have been caused by the negligence of the defendant in operating an automobile on a public highway. In that case the accident causing the injury happened on August 7, 1934. Plaintiff and defendant were married on January 17, 1935. Their marriage relation continued, and action was thereafter commenced by the wife against the husband to recover for her injuries on the grounds of negligence committed by him. Plaintiff in that case based her claim on her right to sue under Mason St. 1927, § 8616, entitled "Separate legal existence."[3] This court answered in the negative and said that "The fact that *prior to their marriage* plaintiff commenced an action against defendant for the same cause, which action she thereafter dismissed, does not create any estoppel or entitle her to any relief in the present suit." (Italics supplied.)

This court referred therein to Drake v. Drake, 145 Minn. 388, 391, 177 N. W. 624, 625, 9 A. L. R. 1064, 1066, wherein this court said:

"* * * But the welfare of the home, the abiding place of domestic love and affection, the maintenance of which in all its sacredness, undisturbed by a public exposure of trivial family disagreements is so essential to society, demands and requires that no new grounds for its disturbance or disruption by judicial proceedings be engrafted on the law by rule of court *not sanctioned or made necessary by express legislation.*" (Italics supplied.)

A majority of the courts adhere to the common-law rule that the wife cannot during coverture maintain a suit against her husband for a tort committed by him against her person, and other jurisdictions have held, as this court held in the Patenaude case, that the rule applies whether the tort was committed *before or after the*

[3]Now M. S. A. 519.01, which provides: "Women shall retain the same legal existence and legal personality after marriage as before, and every married woman shall receive the same protection of all her rights as a woman which her husband does as a man, including the right to appeal to the courts in her own name alone for protection or redress; but this section shall not confer upon the wife a right to vote or hold office, except as is otherwise provided by law."

*marriage.* Spector v. Weisman, 59 App. D. C. 280, 40 F. (2d) 792; Wolfer v. Oehlers, 8 N. J. Super. 434, 73 A. (2d) 95; Kennedy v. Camp, 14 N. J. 390, 102 A. (2d) 595; Lubowitz v. Taines, 293 Mass. 39, 198 N. E. 320; Newton v. Weber, 119 Misc. 240, 196 N. Y. S. 113; Kujek v. Goldman, 9 Misc. 34, 29 N. Y. S. 294; Raines v. Mercer, 165 Tenn. 415, 55 S. W. (2d) 263; Webster v. Snyder, 103 Fla. 1131, 138 So. 755; Henneger v. Lomas, 145 Ind. 287, 44 N. E. 462, 32 L. R. A. 848; Gottliffe v. Edelston [1930] 2 K. B. 378.[4]

The question came squarely before this court in the Patenaude case as to whether the statute providing for "Separate legal existence" of women permitted tort actions by one spouse against the other. The court held that the statute did not so modify or change the common-law rule as to permit a suit for any tort against the person by one spouse against the other where the wrong was committed during coverture and that for this court then to hold that the statute intended to modify the common law to the extent of permitting such suits, *where the wrong was committed before marriage and suit was brought after marriage,* would be illogical; that nothing contained in the statute indicated any such legislative intent; and that the language of the statute could not be construed to show that such partial modification of the common law as to suits in tort by one spouse against the other was intended or made. Mr. Justice I. M. Olsen, speaking for this court, said (195 Minn. 526, 263 N. W. 548):

"* * * If the statute modified the common law as to such suits, it changed that law as to all such suits, whether the wrong was committed before or after the marriage of the parties. It either removed all restrictions on such suits by one spouse against the other for such torts or else *it removed none of the restrictions.* And, having held that the statute did not change the common law as to such torts committed during coverture, we cannot now say that it did change the common law in the respect here claimed without overruling our prior decisions hereinbefore noted. No good reason

---

[4]See, Prosser, Torts (2 ed.) § 101, p. 673.

for so doing is shown. Eschenbach v. Benjamin, 195 Minn. 378, 263 N. W. 154." (Italics supplied.) [5]

In Strom v. Strom, 98 Minn. 427, 107 N. W. 1047, 6 L.R.A.(N.S.) 191, 116 A. S. R. 387, it was held that a married woman cannot, *either before or after a divorce,* maintain a civil action against her husband for a personal tort committed by him against her during coverture. In that same case this court in discussing G. S. 1894, § 5530, providing for separate legal existence of married women, said that (98 Minn. 428, 107 N. W. 1048, 6 L.R.A. [N.S.] 193, 116 A. S. R. 389): "the right of a married woman to maintain an action against her husband for a personal tort is not given by the statute."

Specific provisions as to property rights of any woman at the time of her marriage are contained in § 519.02.

We now come to the precise question whether defendants as third-party plaintiffs can legally maintain their suit for contribution where the plaintiff and one of the third-party defendants named in the suit for contribution had married after the accident and before any suit was instituted. This court in the recent case of American Auto. Ins. Co. v. Molling, 239 Minn. 74, 57 N. W. (2d) 847, reviewed the decisions of this court as to actions for contribution. It was held therein that common liability is the very essence of an action for "contribution"; that a right of contribution does not accrue between tortfeasors unless they were cotortfeasors or joint wrongdoers in the sense that their tort or torts imposed a common liability upon them to the party injured; that a party compelled to discharge a liability for a tort cannot recover contribution from another unless his participation in the tort gave the injured party a cause of action against him; and that "contribution" is a payment made by each, or by any, of several having a common liability of his share in the loss suffered or in the money necessarily

[5]Drake v. Drake, *supra;* Woltman v. Woltman, 153 Minn. 217, 189 N. W. 1022; State v. Arnold, 182 Minn. 313, 235 N. W. 373; Thompson v. Thompson, 218 U. S. 611, 31 S. Ct. 111, 54 L. ed. 1180, 30 L.R.A.(N.S.) 1153, 21 Ann. Cas. 921.

paid by one of the parties in behalf of the other or others.[6] By agreement between the parties the sole question presented to the court in American Auto. Ins. Co. v. Molling, *supra,* was whether a husband whose negligence contributed to the injury of his wife is liable to a joint tortfeasor for contribution to a judgment obtained by the wife against the joint tortfeasor. Mrs. Molling could not maintain an action against her husband for injuries received in the accident due to his negligence since she could not as one spouse maintain a tort action against the other spouse during coverture.

In the present action plaintiff, the wife, did not sue the husband; it was not a suit between spouses; she sued the owner and operator of the automobile which collided with the automobile in which she was riding as a passenger, belonging to the man she married before commencing her suit. The husband was made a third-party defendant under Rule 14.01 providing for the impleading of third parties who might become liable as joint tortfeasors if common liability were established. However, the husband and third-party defendant contends that, even though the accident happened prior to their marriage, their marriage preceded commencement of plaintiff's suit and their relationship under the circumstances provides marital immunity under the common law to the husband, completely eliminating the necessary element of common liability without which an action for contribution cannot succeed, and consequently that he has an absolute defense to the action.

Had the accident occurred during coverture no question would present itself as to contribution under the circumstances which otherwise give rise to this controversy. Defendants and third-party

---

[6]See, Township of Canosia v. Township of Grand Lake, 80 Minn. 357, 83 N. W. 346; Merrimac Min. Co. v. Gross, 216 Minn. 244, 12 N. W. (2d) 506; Gugisberg v. Eckert, 101 Minn. 116, 111 N. W. 945; Duluth, M. & N. Ry. Co. v. McCarthy, 183 Minn. 414, 236 N. W. 766; American Motorists Ins. Co. v. Vigen, 213 Minn. 120, 5 N. W. (2d) 397, 142 A. L. R. 722; Restatement, Restitution, §§ 76 to 86; Hoverson v. Hoverson, 216 Minn. 228, 12 N. W. (2d) 501; In re Estate of Moebius, 231 Minn. 219, 43 N. W. (2d) 104; 2 Beach, Modern Equity Jurisprudence, §§ 822, 824; 2 Story, Equity Jurisprudence (14 ed.) §§ 648, 667; Waldref v. Dow, 172 Minn. 52, 214 N. W. 767; 18 C. J. S., Contribution, § 3; 13 Am. Jur., Contribution, §§ 51, 52.

474

plaintiffs on appeal contend that their suit in contribution is particularly based upon the admitted fact that the plaintiff was single at the time of the accident and did not marry the third-party defendant until 9 days after the occurrence; that therefore their right to contribution, if the third-party defendant, now her husband, was concurrently negligent in causing the accident, existed immediately upon the happening of the event; and that a common liability and the right to contribution in Minnesota under the decisions of this state become fixed as of the time of the tort, and not later. They say, therefore, that the rights they contend for on appeal were established as of the time of the accident and not as of the time of the marriage and that the court was in error in granting summary judgment in favor of the third-party defendants.

In this state contribution has been extended to joint tortfeasors by the common law and this extension has since invariably been attended by common-law liability restrictions as was recently clearly recognized in American Auto. Ins. Co. v. Molling, *supra;* and heretofore in Duluth, M. & N. Ry. Co. v. McCarthy, 183 Minn. 414, 236 N. W. 766; Ankeny v. Moffett, 37 Minn. 109, 33 N. W. 320; Underwriters at Lloyds v. Smith, 166 Minn. 388, 208 N. W. 13; Fidelity & Cas. Co. v. Christenson, 183 Minn. 182, 236 N. W. 618. The rule as stated in these cases is that there may be contribution between joint tortfeasors where the ground of their original common liability was simple negligence in a lawful undertaking and the one seeking contribution was not guilty, intentionally, either of wrong or illegal act.

In Fisher v. Diehl, 156 Pa. Super. 476, 487, 40 A. (2d) 912, 918, the court held:

"We are of opinion that the bringing in of * * * [husband] as an additional defendant in the action brought by his wife against * * * [defendant] was in the interest of right and justice, and that to have refused to have done so would have been an injustice to the original defendant; and that as no harm or injury resulted therefrom to the plaintiff, the judgment should be affirmed, * * *."

But in American Auto. Ins. Co. v. Molling, *supra,* this court disposed of the Fisher case as follows (239 Minn. 82, 57 N. W. [2d] 853):

"The one case that can be found which reaches a contrary result is Fisher v. Diehl, 156 Pa. Super. 476, 40 A. (2d) 912, in which the court holds that since the action is not between the husband and wife, the immunity does not bar the contribution action. The case fails to discuss the 'common liability' element of the action of contribution."

And in Guerriero v. U-Drive-It Co. 22 N. J. Super. 588, 602, 92 A. (2d) 140, 147, that court distinguished the Fisher case by noting that the decision was reached "under Pennsylvania statutes, but such could not occur under our Joint Tortfeasors Contribution Act, with its definition of 'joint tortfeasors' and 'joint liability.' "

The defendants and third-party plaintiffs cite and rely upon Minnesota cases such as Employers Mut. Cas. Co. v. Chicago, St. P. M. & O. Ry. Co. 235 Minn. 304, 50 N. W. (2d) 689; Lunderberg v. Bierman, 241 Minn. 349, 63 N. W. (2d) 355, 43 A. L. R. (2d) 865; Miller v. J. A. Tyrholm & Co. Inc. 196 Minn. 438, 265 N. W. 324; and from other jurisdictions, especially Pennsylvania Greyhound Lines, Inc. v. Rosenthal, 14 N. J. 372, 102 A. (2d) 587.[7] The cited cases do not throw any light upon the situation presented by the circumstances in the case at bar nor affect the common-law marital immunity as it has been applied in this state in the Strom, Patenaude, and American Auto. Ins. Co. cases. The Minnesota cases cited are not applicable to the precise situation to be found in the case at bar since they involve the question of agency under the financial responsibility act, workmen's compensation, and other situations which this court has held permit invoking the rule as to contribution between joint tortfeasors without being barred by common liability restrictions applicable to the facts in the present situation.

In the Pennsylvania Greyhound Lines, Inc. case, Wynne Gold-

[7]Other citations in support of appellant's contention are Schott v. Colonial Baking Co. (W. D. Ark.) 111 F. Supp. 13; Jones v. Kinney (W. D. Mo.) 113 F. Supp. 923; cf. Showers v. United States (D. Pa.) 113 F. Supp. 350; Russell v. United States (M. D. Pa.) 113 F. Supp. 353.

stein suffered personal injuries as the result of a collision on October 22, 1950, between an automobile operated by the defendant Rosenthal and a motor bus of the plaintiff Pennsylvania Greyhound Lines, Inc. She was a passenger in Rosenthal's automobile. Later, on May 22, 1951, she brought suit against Rosenthal and the Greyhound Lines. She obtained a verdict. An appeal was taken, the judgment affirmed, and the Greyhound Lines and one of the other defendants paid the judgment in full. The judgment having been fully paid, an action for contribution followed. On February 1, 1953, Wynne Goldstein married the defendant Rosenthal. One of the defenses asserted was that (14 N. J. 388, 102 A. [2d] 594) "the immunity resulting from the husband-wife relationship between the injured person and one of the tortfeasors prevents a right of recovery by the other tortfeasor." The Supreme Court of the State of New Jersey said (14 N. J. 388, 102 A. [2d] 595) :

"The vice of this reasoning is obvious. The considerations of marital unity and domestic peace and felicity underlying the ancient policy interdicting actions between spouses, * * * have no place here. The payment of the judgment in tort which gave rise to the cause of action for contribution extinguished the defendant Rosenthal's liability under the judgment to the plaintiff Goldstein and the latter's cause of action in tort which had merged in the judgment; and their subsequent marriage could have no effect whatever on the accrued right of action for contribution under the statute. This is axiomatical truth."

The Supreme Court of the State of New Jersey, however, in another opinion entitled Kennedy v. Camp, 14 N. J. 390, 395, 102 A. (2d) 595, 598, the decision bearing the same date as the Rosenthal case, referred to the latter and held that the statutory right of contribution is founded on a common liability in tort; and said "there is none such here. Joint or several liability to the injured judgment plaintiff for the tortious conduct, enforceable by action, is a substantive element of the right." Since marital immunity was involved, the court then went on to say (14 N. J. 395, 102 A. [2d] 598) :

"It is an ancient rule of the common law that a tort committed by one spouse against the person or character of the other is not remediable by action. \* \* \* The ground of this commonlaw immunity is the legal identity of husband and wife. \* \* \*

"The doctrine is generally sustained on the 'sociological and political ground that it would introduce into the home, the basic unit of organized society, discord, suspicion and distrust, and would be inconsistent with the common welfare.' \* \* \* *And, for the same basic reason, liability for ante-nuptial torts is extinguished by marriage.*" (Italics supplied.) [8]

The court held, as this court has held, that the unity of interest of the spouses has not been altered in that regard by the Married Persons Act in that state, a similar act to the one in this state providing for the "separate legal existence" of married women.

In the Kennedy case the court in discussing the Married Persons Act indicated that the radical change in the common-law philosophy of (14 N. J. 397, 102 A. [2d] 599) "marital union, identity, and integrity cannot be made to rest upon statutory provisions of uncertain and doubtful import;" and said "it is fairly to be presumed that the lawgiver was familiar with this basic policy of centuries, and a purpose to effect a change so fundamental would be expressed in clear and indubitable terms," citing Thompson v. Thompson, 218 U. S. 611, 31 S. Ct. 111, 54 L. ed. 1180, 30 L.R.A.(N.S.) 1153, 21 Ann. Cas. 921. It was held that (14 N. J. 397, 102 A. [2d] 599):

"The policy is likewise inherent in the Contribution Law. There is no right of contribution unless there be joint wrongdoers under a joint or several liability to the injured person for the injurious consequences of the wrongful act, neglect or default reduced to judgment. This is clear and explicit provision. \* \* \* An interpretation of the Contribution Law that would sustain contribution in these circumstances would afford the means of rendering the husband indirectly liable to his wife in tort for negligence, and thus to transgress this salient principle of the common law that

[8]Henneger v. Lomas, 145 Ind. 287, 44 N. E. 462, 32 L. R. A. 848; Gottliffe v. Edelston [1930] 2 K. B. 378.

478

interdicts such intrusions upon marital unity and domestic contentment." (Italics supplied.)

Referring to the American Auto. Ins. Co. case, in the same opinion the court said the (14 N. J. 399, 102 A. [2d] 600) "very essence of the action of contribution is *'common liability'* " (italics supplied) ; and the statutory remedy of contribution among joint tortfeasors constitutes "a judicial extension of the common-law doctrine of contribution," and does not change "the basis of the action of contribution." Two of the Supreme Court justices of the State of New Jersey joined in a concurring opinion stating that (14 N. J. 401, 402, 102 A. [2d] 601, 602) "such policy as may possibly prevail against tort actions between spouses clearly has no bearing on situations which do not involve any direct proceedings between them as adverse party litigants"; and consequently there was a dissent "To the extent that the majority opinion suggests a contrary view." Considering, however, that the "statutory language is not sufficiently broad to extend to the instant case" they felt compelled to agree with the conclusion of the majority.

The language encountered in the "Uniform Contribution Among Tortfeasors Act," which has been enacted in at least 8 jurisdictions, does not appear to remove all obstacles in reaching full recognition of the right of contribution among tortfeasors under all circumstances so as to overcome the limitation rooted in the concept of marital unity since the term "joint tortfeasors" is defined therein as "two or more persons jointly or severally liable in tort for the same injury." The only opinion holding to the contrary is to be found in Fisher v. Diehl, *supra,* and the court in that opinion apparently passed over the definition of joint tortfeasors, without giving any notice to it, seemingly justifying its holding in terms of the essentially equitable nature of the action of contribution. Such a solution might well be questioned under the holding of the Minnesota court in the American Auto. Ins. Co. case. Such a circumvention in the face of the Strom and Patenaude decisions of this state, and the recent decision written by Mr. Chief Justice Loring in the American Auto. Ins. Co. case, could well be vulnerable to attack as judicial

legislation. Being faced with the condition of the statutes and the import of the language in our decisions, we must conclude, in the final analysis, that the remedy contended for on this appeal must lie with the legislature.[9] This court cannot change the fundamental requirements of the action of contribution to allow recovery on the basis of the joint tortious conduct rather than on the basis of "common liability" *even if it were convinced of the merits of such a change.*

As stated in Jung v. St. Paul Fire Dept. Relief Assn. 223 Minn. 402, 405, 27 N. W. (2d) 151, 153: "While the common law is flexible and adaptive, and may be applied to new conditions, the courts cannot abrogate its established rules any more than they can abrogate a statute." See, 3 Dunnell, Dig. (3 ed.) § 1504. In Congdon v. Congdon, 160 Minn. 343, 362, 200 N. W. 76, 82, the court said:

"* * * it is the province of the legislature and not of the court to modify the rules of the common law."

See, 3 Dunnell, Dig. (3 ed.) § 1503.

In spite of the statement by this court in Employers Mut. Cas. Co. v. Chicago, St. P. M. & O. Ry. Co. that (235 Minn. 309, 50 N. W. [2d] 693) " 'Common liability' exists immediately after the acts of the tortfeasors which give rise to a cause of action against them," and the statement in the American Auto. Ins. Co. case that (239 Minn. 82, 57 N. W. [2d] 852) "obligation or liability [upon which the right to contribution or indemnity is based] is tested as of the time of the tort," nevertheless, those statements taken out of context are not applicable here to the extent of modifying the rules of the common law, for in the American Auto. Ins. Co. case this court in the closing paragraphs of the opinion said (239 Minn. 86, 57 N. W. [2d] 855):

"The rule of 'common liability' is fundamental in the action for contribution, and such it shall be until changed by the legislature. It is not for the courts to make, amend, or change the law, but only to apply it. United States v. Consolidated Elev. Co. (8 Cir.)

[9] 4 Duke Bar. J. 111, 115.

141 F. (2d) 791; Anderson v. Federal Cartridge Corp. (D. C.) 62 F. Supp. 775, affirmed (8 Cir.) 156 F. (2d) 681; see, Stabs v. City of Tower, 229 Minn. 552, 40 N. W. (2d) 362; cf. Johnston v. Tourangeau, 193 Minn. 635, 259 N. W. 187. The very fact that this limitation has been clearly declared by this court to be a condition to the recovery in contribution makes it mandatory that we adhere to it. A decision has been made on the matter, and the doctrine of *stare decisis* compels us to follow our previous decision in the absence of manifest error. See, Melin v. Aronson, 205 Minn. 353, 285 N. W. 830. We can find no such error in the previous rulings on this matter."

It is not for the courts to change or modify the well-established doctrine of marital immunity. Although that doctrine originated in the common law and was precipitated by the courts, it is as much a part of our law as if it were statutory and cannot now be repudiated by the judiciary.

The question presented in the case at bar does not call for nor permit judicial extension of the doctrine at this time but simply for an application of its well-established principles. The trial court was justified in granting summary judgment.

Affirmed.